**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| AMY FONTAINE and TODD FONTAINE, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:15-cv-04213-NKL |
| v. | ) ) | |
| COLUMBIA PROPERTIES OZARKS, LTD., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

Before the Court is Defendants' Motion to Exclude Expert Testimony [Doc. 47] and Defendants' Motion for Summary Judgment [Doc. 45]. For the following reasons, Defendants' Motion to Exclude Expert Testimony is granted in part and denied in part and Defendants' Motion for Summary Judgment is denied.

**I.      Background**

On May 30, 2012, Plaintiff Amy Fontaine travelled to Defendants' Tan-Tar-A Resort in Osage Beach, Missouri, for a work conference. [Doc. 51, pp. 1–2]. The Resort did not provide a sidewalk, so guests walked on the driveway. *Id.* After checking in, Ms. Fontaine walked along the driveway looking to find her room. *Id.* at 4. Ms. Fontaine was "pulling luggage with her purse/work bag and laptop on top of it and carrying her conference materials in her left arm." *Id.*

1

Around 8:00 p.m.[1], Ms. Fontaine fell while walking on the driveway trying to locate her room. *Id.* In the area where Ms. Fontaine fell, there was a depression in the roadway approximately one-inch deep by one foot wide by one and one half foot in diameter. [Doc. 46, p. 3]. Ms. Fontaine suffered injuries to her ankle, knee, and shoulder subsequently requiring eight surgeries. [Doc. 51, p. 1]. Tan-Tar-A employees later stated in depositions that another company, APAC, had been contracted to make repairs to the area in which Ms. Fontaine fell, but only "seal-coated" the area; no repairs were done to fill in the missing asphalt. [Doc. 46, p. 7].

Ms. Fontaine and her husband filed suit against Tan-Tar-A Resort and its parent companies, alleging negligent premises liability. Defendants now move to exclude the testimony of Plaintiffs' expert and move for summary judgment.

## II. Discussion

### A. Defendants' Motion to Exclude Expert Testimony

Plaintiffs have designated Arthur Chew as a liability expert. Mr. Chew is a civil engineer and currently serves as the city engineer in Ocean City, New Jersey. [Doc. 50-1, p. 3]. Defendants move to exclude Mr. Chew's testimony under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), arguing the testimony is not reliable and otherwise improper. [Doc. 48, p. 2]. If allowed, Mr. Chew will testify that:

(1) Tan-Tar-A's driveway where Amy Fontaine fell was not reasonably safe because of the missing asphalt and was in violation of applicable codes and standards because it created an unreasonable risk of tripping and falling,

(2) the driveway was substandard and in need of repairs,

---

[1]     Sunset on May 30, 2012, in Osage Beach, Missouri was 8:27 p.m.. Plaintiffs characterize the lighting at 8:00 p.m. as "dusk," [Doc. 51, p. 3], while Defendants contend it was "still light out." [Doc. 46, p. 1].

(3) because the injury was suffered at approximately 8:00 p.m., lighting and shadows on the black seal coated surface made the depression nearly impossible to see,

(4) because Amy Fontaine was pulling her luggage and conference materials, the pothole depression area was not within her lower peripheral vision, and

(5) poor subsurface draining caused the initial loss of asphalt which occurred over time.

[Doc. 50, p. 2]. Plaintiffs object to Defendant's motion. *Id.*

### 1. Legal Standard

Federal trial judges have "broad discretion" in making decisions concerning expert testimony's admissibility. *Bradshaw v. FFE Transp. Servs., Inc.*, 715 F.3d 1104, 1107 (8th Cir. 2013). Under Fed. R. Evid. 702 and the guidance set forth in *Daubert*, expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co., LLC,* 754 F.3d 557, 562 (8th Cir. 2014) (citing *U.S. v. Finch,* 630 F.3d 1057, 1062 (8th Cir. 2011) (holding that doubts about usefulness of expert testimony are resolved in favor of admissibility); *Robinson v. GEICO Gen. Ins. Co.,* 447 F.3d 1096, 1100 (8th Cir. 2006) (holding that expert testimony should be admitted if it "advances the trier of fact's understanding to any degree"); *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001) (Rule 702 "clearly is one of admissibility rather than exclusion"). "As long as the expert's . . . testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* (citing *Daubert,* 509 U.S. at 590, 596). Exclusion of expert opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minn. Mining & Mfg. Co.,* 112 F.3d 306, 309 (8th Cir. 1997).

Even so, pursuant to *Daubert*, the Court's role as "gatekeeper" in determining the admissibility of expert testimony requires the Court to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93. This question of whether "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" is known as the "reliability and relevancy" test. *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, (1999)). "The main purpose of *Daubert* exclusion is to prevent juries from being swayed by dubious scientific testimony." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011).

"When making the reliability and relevancy determinations, a district court may consider: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community." *Russell*, 702 F.3d at 456 (citing *Daubert*, 509 U.S. at 592-94).

Plaintiffs argue that *Daubert* does not apply to Mr. Chew's testimony, because "the *Daubert* standard only applies to expert testimony which is being proffered on a strictly scientific basis or foundation." [Doc. 50, p. 3]. That is incorrect; *Daubert* applies to all expert testimony. *Jaurequi v. Carter Manufacturing Company, Inc.*, 173 F.3d 1076, 1082 (8th Cir. 1999). However, the *Daubert* standard is "flexible" and the above factors are guidelines rather than "a definitive checklist." *Id.* The expert's testimony must at the very least satisfy "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," but "whether

4

*Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire*, 526 U.S. at 151, 153.

### 2. Mr. Chew's Testimony

Plaintiffs have the burden of establishing the admissibility of Mr. Chew's testimony. *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001). Many of the Defendants' concerns regarding Mr. Chew's expected testimony reference the methods he used in reaching his conclusions; namely that he "observed photographs of the area of the fall . . . and conducted what he called a 'foot slip test.' He conducted no measurements of the area." [Doc. 52, p. 5]. Yet "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Loudermill v. Dow Chem. Co.,* 863 F.2d 566, 570 (8th Cir. 1988); *see also Air Evac EMS, Inc. v. Aeronautical Accessories, Inc.,* No. 96-3605, 1997 WL 545304, at * 1 (8th Cir. Sept. 5, 1997) ("But weakness in the factual basis of expert testimony goes to the weight, not the admissibility, of that testimony."). Furthermore, because Tan-Tar-A repaired the area immediately following Ms. Fontaine's fall, Mr. Chew used the evidence available to him in reaching his conclusions. [Doc. 50, p. 6].

Plaintiffs have illustrated that Mr. Chew has extensive experience in civil engineering, applicable standards and codes, and has expertise in "walkways, driveways, asphalt, paving, pavement repair, and maintenance of pavement." [Doc. 50, p. 2]. His testimony is relevant in establishing the condition of the driveway where Ms. Fontaine fell. Additionally, his testimony will assist the jury in understanding the technical aspects of driveway safety as well as the condition of the asphalt in the relevant area, a topic most likely outside the realm of common

5

knowledge. The Court finds that his knowledge on driveway safety and maintenance is established and supported by sufficient data and facts. Mr. Chew's opinions on whether or not the driveway was reasonably safe and whether or not the driveway was in need of repairs, opinions (1) and (2) above, are admissible. *See Hose v. Chicago Nw. Transportation. Co.,* 70 F.3d 968, 974 (8th Cir. 1995) ("Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.").

However, that testimony should be limited to the above mentioned opinions regarding the condition of the driveway and pavement safety standards. To the extent that Plaintiffs seek to have Mr. Chew testify outside of that area, that testimony should be excluded. The Court finds that there is insufficient evidence contained in Mr. Chew's report with which he could rely on in forming Opinions (3) and (4). *See* [Doc. 50-1]. While Mr. Chew is not per se excluded from testifying to "common sense observations," the lighting at the time of Ms. Fontaine's fall and the specific area within or outside of her peripheral vision are not based on any objective evidence in the record. *See Pro Serv. Auto., L.L.C. v. Lenan Corp.*, 469 F.3d 1210, 1216 (8th Cir. 2006) ("Where 'opinion evidence . . . is connected to existing data only by the *ipse dixit* of the expert,' a district court 'may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'").

In this case, regarding the effect of lighting on the driveway depression, Mr. Chew admits that he does not have specific training or qualifications for this opinion, but rather that it is a "common observation" and "common sense." [Doc. 50-1, pp. 84–85]. Concerning Ms. Fontaine's peripheral vision, Ms. Fontaine testified that she could not say where she was looking at the time of her fall. Mr. Chew testified that he was "putting [himself] in her shoes" and "guessing" based on "common sense." [Doc. 50-1, pp. 90–91]. Mr. Chew noted that his opinion

6

on Ms. Fontaine's line of sight was not based on any specific training or education. *Id.* at 93. The record shows no factual information by which Mr. Chew could testify to the shadows on the asphalt or Ms. Fontaine's peripheral vision at the time of her fall. As a result, Opinions (3) and (4) do not satisfy "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," under *Daubert*. *See Kumho Tire*, 526 U.S. at 151, 153.

Finally, as to Opinion (5) regarding the causation of the asphalt depression, Defendants assert that this opinion is untimely because "Mr. Chew does not address the causation for the depression at issue or even mention subsurface drainage as a problem in his report." [Doc. 52, p. 8]. The first and only time Mr. Chew referenced the subsurface drainage was in his deposition when he stated that poor subsurface drainage caused the depression. Mr. Chew had ample opportunity to address this opinion in a supplemental report, but has not done so. Therefore, this opinion is inadmissible under Fed. R. Civ. Pro. 26(a)(2).

### B. Defendants' Motion for Summary Judgment

A motion for summary judgment "is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Scheerer v. Hardee's Food Sys.*, 16 F.3d 272, 273 (8th Cir. 1994) (citation omitted). "A judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Hudson v. Tyson Fresh Meats, Inc.*, 787 F.3d 861, 868 (8th Cir. 2015) (citation omitted). "Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party." *Smith v. Basin Park Hotel, Inc.*, 350 F.3d 810, 813 (8th Cir. 2003) (citation omitted).

7

"When a plaintiff sues a possessor of land for injuries arising out of an unreasonably dangerous condition on that land, the standard of care owed by the defendant is defined by the relationship existing between the possessor of the land and the plaintiffs." *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. 1993). A licensee "is a person who is privileged to enter or remain on land only by virtue of the possessor's consent." Restatement (Second) of Torts, § 330 (1965). An invitee, by contrast, "is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Restatement (Second) of Torts, § 332 (1965). The duty owed to invitees is greater than the duty owed to licensees; whereas a landowner must only warn licensees of known dangers, the landowner owes a duty to protect invitees against both known dangers and those that would be revealed by inspection. *Carter v. Kinney,* 896 S.W.2d 926, 928 (Mo. banc 1995). As a paying guest of the Tan-Tar-A resort, Ms. Fontaine was an invitee. *See Milliken v. Trianon Hotel Co.*, 364 S.W.2d 71, 74 (Mo. Ct. App. 1962).

To survive Defendants' motion, Plaintiffs "must make a sufficient showing on 'every essential element of [its] case for which [it has] the burden of proof at trial.'" *Smith*, 350 F.3d at 813. The elements of premises liability under Missouri law are: (a) a dangerous condition existed on Defendants' premises which involved an unreasonable risk; (b) Defendants knew or by using ordinary care should have known of the condition; (c) Defendant failed to use ordinary care in removing or warning of the danger; and (d) as a result, Plaintiff was injured. *See Rycraw v. White Castle Sys., Inc.*, 28 S.W.3d 495, 499 (Mo. Ct. App. 2000). Defendants do not contest (a) or (d), but contend that, with regard to (b), Defendants did not have actual or constructive notice of the asphalt depression. Additionally, as to (c), Defendants argue that the depression was open and obvious which, if true, could relieve Tan-Tar-A of its duty to warn guests of the depression.

8

### 1. Actual or Constructive Notice

Defendants argue that "[t]he notice requirement has traditionally been a strict requirement" and contend that a lack of actual notice defeats Plaintiffs' case. [Doc. 46, p. 6] (citing *Hunt v. National Super Markets, Inc.*, 809 S.W.2d 157 (Mo. Ct. App. 1991); *Hayes v. National Super Markets, Inc.*, 612 S.W.2d 819 (Mo. Ct. App. 1981)). Yet, as noted above, land owners must warn invitees against both known dangers *and those that would be revealed by inspection*, commonly known as constructive notice. *Carter v. Kinney,* 896 S.W.2d 926, 928 (Mo. banc 1995) (emphasis added). Defendants conclude that "there is insufficient evidence for plaintiffs to make a submissible premises liability claim because there is no actual or constructive notice on the part of Tan-Tar-A," at least in part because "Plaintiff Amy Fontaine's fall was not on the main roadway, but in a roadway behind Building B," noting that "Tan-Tar-A covers more than 400 acres." [Doc. 46, p. 7]. Defendants thus argue that, even utilizing ordinary care and conducting regular inspections, the depression could not have been discovered.

While Tan-Tar-A employees stated in their depositions that they were not aware of the depression prior to Ms. Fontaine's fall, a reasonably jury could find that Defendants were negligent in failing to discover the dangerous condition. *See Bartel v. Cent. Mkts.,* 896 S.W.2d 746, 748 (Mo. Ct. App. 1995) ("[T]he possessor is required to inspect the premises to ascertain potential dangerous conditions of which he or she is unaware."). Ms. Fontaine stated in her deposition that the area in which she fell was the exact route she was directed to take to reach her room, and a common path taken to reach the resort's Restaurant. [Doc. 46-1]. A reasonabe juror could find that the area was a road commonly travelled and that Defendants did not utilize ordinary care when Tan-Tar-A employees failed to discover a pothole on that road. The deposition testimony of Tan-Tar-A employees and Ms. Fontaine creates an issue of material fact

which only a jury can resolve by judging the credibility of that testimony. *See Custer v. Wal-Mart Stores East*, 492 S.W.3d 212 (Mo. Ct. App. 2016).

### 2. Open and Obvious

While Defendants contend that Tan-Tar-A employees had no constructive notice of the depression, Defendants also argue that the depression was open and obvious. [Doc. 46, pp. 8–10; Doc. 56, pp. 14–15].

Under Missouri law, "[a]n open and obvious danger nullifies the duty to warn unless the possessor should anticipate the invitee will be harmed despite constructive knowledge on the part of the invitee." *Lacy v. Wright*, 199 S.W.3d 780, 783 (Mo. Ct. App. 2006). "[A] possessor of land is entitled to expect that its invitees will exercise ordinary perception, intelligence, and judgment to discover open and obvious conditions, appreciate the risk these conditions present, and take the minimal steps necessary to avert a tragedy." *Holzhausen v. Bi-State Dev. Agency*, 414 S.W.3d 488, 494-95 (Mo. Ct. App. 2013) (citation omitted).

In this case, Defendants emphasize that Ms. Fontaine failed to perceive the depression not once but twice, since she originally walked past her room and had to turn around and pass the area again. [Doc. 46, p.2]. Defendants argue that Ms. Fontaine was distracted because "she was pulling luggage including a purse/workbag with a lap top in her right hand and carrying conference materials in her left hand" and note that "[s]he had never been to Tan-Tar-A and was looking for her room." [Doc. 46, p. 9]. Defendants conclude that the depression was open and obvious and that Ms. Fontaine would have seen it, had she been paying closer attention.

In *Bartel v. Cent. Markets, Inc.*, 896 S.W.2d 746 (Mo. App. 1995), the plaintiff tripped on an uneven sidewalk in front of a grocery store and the defendant testified that he never noticed the uneven sidewalk until after the plaintiff fell. The Court observed that customers were

10

likely to "exit[] the store with arms full of groceries or pushing grocery carts ahead of them." *Id.* at 748. At a resort, guests—some of whom will be there for the first time—are likely to be carrying or pushing luggage, and without a sidewalk available, likely to be doing so on the roadway. A reasonable juror could find that, even if the depression was open and obvious, Defendants—the owners of a resort with no sidewalk available—"should anticipate the invitee will be harmed despite constructive knowledge on the part of the invitee." *Lacy v. Wright*, 199 S.W.3d 780, 783 (Mo. Ct. App. 2006). Furthermore, "Eight employees of Tan-Tar-A, including the general manager, have been deposed and none of them were aware of the depression prior to plaintiff Amy Fontaine's fall," [Doc. 46, p. 7], despite regular inspections of the area. If it was not open and obvious to Tan-Tar-A employees, the Court cannot conclude as a matter of law that it was open and obvious to Ms. Fontaine.

Viewing the evidence in the light most favorable to Plaintiffs and according Ms. Fontaine the benefit of all reasonable inferences, a reasonable juror could find that Defendants knew or should have known of the missing asphalt in the Tan-Tar-A driveway, that the depression was a dangerous condition, and that the depression caused Ms. Fontaine's fall. Likewise, a reasonable juror could find that the depression was not open and obvious.

III.     **Conclusion**

For the foregoing reasons, Defendants' Motion to Exclude Expert Testimony [Doc. 47] is granted in part and denied in part and Defendants' Motion for Summary Judgment [Doc. 45] is denied.

11

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 3, 2016
Jefferson City, Missouri